863 So.2d 1224 (2004)
STATE of Florida, Petitioner,
v.
Alfred J. WAGNER, Respondent.
No. SC02-2167.
Supreme Court of Florida.
January 8, 2004.
Charles J. Crist, Jr., Attorney General, and Thomas H. Duffy, Assistant Attorney General, Tallahassee, FL; and Judy Taylor Rush, Assistant Attorney General, Daytona Beach, FL, for Petitioner.
*1225 James B. Gibson, Public Defender, and Nancy Ryan, Assistant Public Defender, Seventh Judicial Circuit, Daytona Beach, FL, for Respondent.
BELL, J.
We review State v. Wagner, 825 So.2d 453 (Fla. 5th DCA 2002), which expressly and directly conflicts with State v. Tremblay, 642 So.2d 64 (Fla. 4th DCA 1994).[1] For the reasons that follow, we quash the Fifth District's decision in Wagner and approve the decision of the Fourth District in Tremblay, which held that a signed court status form does not constitute a final, appealable order under the Florida Rules of Appellate Procedure. Our approval of Tremblay, however, is limited to its holding. We disapprove the dicta expressed in that opinion.

I.
The State sought to have Alfred Wagner involuntarily committed as a sexually violent predator pursuant to the Jimmy Ryce Act. §§ 394.910-.931, Fla. Stat. (2002). On January 23, 2002, the circuit court held a hearing on Wagner's motion to dismiss the State's involuntary commitment petition. The court denied the motion to dismiss but concluded that Wagner should be released from custody pending resolution of the commitment proceedings. The judge then signed the "open court minutes" form, which contained the following notation: "Defendant to be released immediately from custody."
At the hearing, the judge instructed Wagner's attorney to prepare the formal order. This instruction was also noted on the court minutes form: "[Wagner's attorney] to prepare an Order." The judge explained to the attorneys that Wagner's attorney was to send a copy of the drafted order to the State's attorney and that a follow-up hearing would be held if the State's attorney objected to the content of the drafted order.[2] As it turned out, the *1226 State did object to portions of Wagner's drafted order, arguing that it did not accurately reflect the judge's prior oral pronouncements. A hearing on the matter was held on March 20, 2002. On March 26, 2002, the court issued its formal written order releasing Wagner from custody pending resolution of the involuntary commitment proceedings.
On April 25, 2002, the State petitioned the Fifth District for a writ of certiorari. The district court dismissed the petition as untimely filed. Wagner, 825 So.2d at 453-54. It concluded that the signed court minutes form, which "gave a clear written direction to release Wagner immediately," constituted an appealable order. Id. at 455. This conclusion was premised upon the determination that the order was rendered that same day when it was filed with the court clerk. Id. Consequently, the State's certiorari petition was deemed untimely because it was filed more than thirty days thereafter. Id. at 455-56.
The State invoked this Court's discretionary jurisdiction, claiming that the district court's opinion expressly and directly conflicted with Tremblay. In Tremblay, the Fourth District held that a signed court status form, which indicated that a particular charge against the defendant had been dismissed, did not constitute a final, appealable order under the Florida Rules of Appellate Procedure. We exercised our discretionary jurisdiction to resolve the conflict.

II.
Wagner argues that the trial court rendered its order[3] on January 23, which was the date on which it orally pronounced that Wagner was to be immediately released and on which it then signed and filed with the clerk the court minutes form, which indicated that Wagner was to be immediately released. The State, on the other hand, contends that the trial court's order was not rendered until March 26, the date on which the trial court issued its formal written order. If Wagner is correct, then the State's certiorari petition was properly dismissed by the district court as untimely filed.[4] If the State is correct, then its petition was timely filed and improperly dismissed by the district court.
The Florida Rules of Appellate Procedure define an "order" as "[a] decision, order, judgment, decree, or rule of a lower tribunal, excluding minutes and minute book entries." Fla. R.App. P. 9.020(f). The rules explicitly exclude "minutes and minute book entries" from the definition of "order."[5] The Committee Notes to rule 9.020 state that "[m]inute book entries are excluded from the definition in recognition of the decision in Employers' Fire Ins. Co. v. Continental Ins. Co., 326 So.2d 177 (Fla. 1976). It was intended that this rule encourage *1227 the entry of written orders in every case."
In Employers' Fire, we noted that "[t]he inevitable variations in the way judges complete court minutes suggest that these entries would generally be an unreliable guide by which to measure either appellate or limitations time." 326 So.2d at 180. We also noted the "wide disparity in the practices of our trial courts as to the time, manner and completeness of minute book entries," id., and foresaw "a whole range of legal problems arising from signings on a day subsequent to the day of the actual activity recorded, and from the completeness of the information contained in minute book recitations." Id. at 180 n. 8. On the other hand, we also recognized "that there is an arbitrary aspect to a measuring event which depends upon the willingness of trial counsel to supply a form called `final judgment' to the trial judge." Id. at 180.
Ultimately, we concluded in Employers' Fire that "a distinction should be drawn between the time for commencing an appeal and the time for commencing a statute of limitations on a money judgment." Id.[6]
With respect to an appeal, the arbitrary delay between a determination of liability and the signing of a judgment document is not a significant cause for concern. The rendition of an adverse money judgment in a lawsuit, and the desire to suspend the effect of the loss as promptly as possible, provide sufficient incentives for counsel to prepare and submit the necessary paper work to end the trial court's labor and lay the predicate for appellate review. Equally important is the fact that a trial court's decision is more clearly articulated, and therefore more reviewable, in a final judgment document than in a minute book notation. For these reasons, the time for taking an appeal should be governed by the rendition of a formal document of judgment by the trial judge ... rather than by the signed entry in a minute book.
Id. at 180-81 (emphasis added).
We believe that the rationale of Employers' Fire, which was explicitly included in the Florida Rules of Appellate Procedure, controls our resolution of this case. For purposes of Florida Rule of Appellate Procedure 9.100(c)(1), which requires a petition for a writ of certiorari to be filed "within 30 days of rendition of the order to be reviewed," a court minutes form, even if signed by the judge, does not constitute a reviewable order. The text of Florida Rule of Appellate Procedure 9.020(f), the Committee Notes, and the rationale of Employers' Fire clearly dictate this result. A formal written order will articulate the trial court's decision and its supporting reasoning much more clearly than a clerk's notation in a court minutes form. The result reached by the Fifth District in Wagner would not serve the policy of efficient and thorough appellate review. It would also create situations of inadvertent rendition where the judge had signed a court minutes form and filed it with the clerk unbeknownst to the parties.[7] A regime *1228 engendering so much uncertainty is anything but workable.

III.
Because the signed court minutes form was not an order within the definition of the Florida Rules of Appellate Procedure, the act of filing it with the court clerk did not amount to the rendition of an order. The appellate jurisdictional clock of Florida Rule of Appellate Procedure 9.100(c)(1) did not begin ticking in this case until March 26, the date on which the formal written order was signed by the judge and filed with the court clerk. It follows, therefore, that the State's petition for a writ of certiorari was timely filed. Accordingly, we quash the decision of the Fifth District in the case below.
With respect to Tremblay, we approve the holding of the Fourth District that a signed court status form does not constitute a final, appealable order under the Florida Rules of Appellate Procedure. However, we disapprove the court's statement that under certain peculiar circumstances a court status form could be found to be a final, appealable order.
It is so ordered.
ANSTEAD, C.J., and WELLS, PARIENTE, LEWIS, QUINCE, and CANTERO, JJ., concur.
NOTES
[1] We have jurisdiction under article V, section 3(b)(3) of the Florida Constitution.
[2] The transcript of the hearing reveals the following colloquy:

THE COURT: ... So what I'm going to do at this point, Mr. Kutsche [Wagner's attorney], is I'm goingyou're going to have to draw the order, but what I'm going to do, at this moment, subject to a formal order, I'm going to deny your motion to dismiss the petition in the case without prejudice for you to raise the additional arguments that you have wanted, that you've filed here today at a later time, and I'm going to order Mr. Wagner to be released immediately from the custody of the Department of Children and Families.
....
THE COURT: And I'd ask you to draw the order, and I'll find the fifteen days [sic] for the State to appeal to begin upon the rendition of the order.
[WAGNER'S ATTORNEY]: Yes sir.
[STATE'S ATTORNEY]: I would ask Mr. Kutsche to somehow notify me so that I can, when the order is drafted and when it's signed by you so I know what my appeal time is.
THE COURT: Well, what will happen is ... [b]efore he sends me an order to sign, he'll send you a copy of the order so you can approve it as to form.
[STATE'S ATTORNEY]: Right.
THE COURT: And then you'll know when it's been signed.
[STATE'S ATTORNEY]: I just wanted that on the record so I know that I'm going to receive that copy.
THE COURT: In other words, once you draft the order, send it over, let her look at it, if she thinks you've got something in there that I didn't say, then you can,we even have hearings sometimes when they disagree as to the form of the order. Basically, I want to give you something to appeal more than what I just said, more than some form order that the clerk prepared. By then, the Supreme Court may decide that Atkinson was wrongly decided and we can all take it back.
....
[WAGNER'S ATTORNEY]: Your honor, is he-I take it that he actually is not going to be released until the formal order is signed and transmitted.
THE COURT: I just signed an order saying that he's to be released from custody immediately. We'll give this to these gentleman that brought him here, and they can head on back without him unless he wants to go back with them to get his stuff and be released from Martin County, that's up to him. I guess they'll give him a ride, I don't know. I don't know if their insurance will cover it or not.
[3] "An order is rendered when a signed, written order is filed with the clerk of the lower tribunal." Fla. R.App. P. 9.020(h).
[4] A petition for a writ of certiorari must be filed "within 30 days of rendition of the order to be reviewed." Fla. R.App. P. 9.100(c)(1).
[5] Instead of looking to rule 9.020(f), the Fifth District looked to a legal dictionary to define an "order" as "a command, direction, or instruction." Wagner, 825 So.2d at 455 (quoting Black's Law Dictionary 1123 (7th ed.1999)).
[6] Although the issue before us in Employers' Fire dealt expressly with "judgments," we noted that "[b]oth parties argue from decisions fixing the time for commencement of an appeal." Id. at 179-80.
[7] For example, in State v. Brown, 629 So.2d 980 (Fla. 5th DCA 1993), the Fifth District held that a "court minutes/order" form, signed by the judge and filed with the court clerk, constituted a rendered order. As opposed to the court minutes form at issue here, and the court status form at issue in Tremblay, the form signed by the judge and filed with the clerk in Brown was explicitly designated by the court as an "order." Brown, 629 So.2d at 980 ("The trial court X'd the blanks preceding both the words `Court Minutes' and the words `Order (Motion Hearing),' indicating that the subject form was both the court minutes and an order of the court.").