WARNER, J.
Appellant, Luis Rosario, challenges the trial court’s denial of his motion for post-conviction relief from his conviction of carrying a concealed weapon by a convicted felon. In that motion, he claimed that trial counsel was ineffective in failing to request a jury instruction defining “deadly weapon,” because the weapon he carried was a “bread knife.” The trial court summarily denied relief. We conclude that even if an instruction should have been given, appellant has not shown that, but for counsel’s error, the result of the proceeding would have been different. Strickland v. Washington, 466 U.S. 668, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). We therefore affirm.
Officers encountered Rosario when they responded to a BOLO for a Latin male wearing dark colored shorts and a leather jacket. During cross examination, the testifying officer revealed that the BOLO was a result of a report of an aggravated battery with a knife. The officers observed Rosario, who matched this description, and they attempted to stop him. Rosario began to run away. During the chase, an officer observed him throw a long, skinny object. The officer was able to detain Rosario and recover the object — a knife approximately fourteen inches in length with an eight-inch blade. Later, Rosario admitted to the officers that he had possessed the knife and that he was carrying it for protection from a person of whom he was afraid. At trial only the officer testified. Rosario called no witnesses, nor did he testify.
The issue of the deadliness of the weapon was fully addressed during closing arguments. Rosario’s counsel maintained the knife was a common household item, telling the jury “that’s a decision you have to make, is was this a deadly weapon.” He explained that the jury instruction would not mention “bread knife” or “serrated-edged knife.” Counsel maintained that this was simply a bread knife and not a deadly weapon.
The prosecutor took up the weapon issue in his closing argument. He said,
The question you have to answer as to whether this is a weapon is, can it be used in a way, not was it used in a way, can it be used in a way that could cause serious injury or death. Can a knife with a blade that’s eight to nine inches long be used in a way that could cause death.... If you think it’s not possible for this knife to be used by anybody in any manner to seriously injure or kill somebody, well maybe it is just a bread knife then.
Thus, the jury was well aware of its obligation to determine that the knife Rosario carried must be a deadly weapon and not a mere common household object. Unlike both Nystrom v. State, 777 So.2d 1013 (Fla. 2d DCA 2000) and McNeally v. State, 884 So.2d 494 (Fla. 5th DCA 2004), where the defendants carried household utensils and readily offered an innocent explanation for their presence, here Rosario admitted that he was carrying the knife for protection, not for normal culinary pursuits. The jury was able to examine the knife and come to a conclusion as to whether it was capable of inflicting serious bodily injury or death. Had a jury instruction on “deadly weapon” been read to the jury, its language would have been *1287 similar to what the prosecutor told the jury to consider in determining whether the knife was a deadly weapon. See Moore v. State, 903 So.2d 341, 342 (Fla. 1st DCA 2005)(noting that a deadly weapon is “one likely to produce death or great bodily injury”).
Under these facts, no Strickland prejudice has been shown. There is no reasonable probability that the outcome would have been different or that confidence in the outcome has been undermined by the failure of the court to read the deadly weapon definition to the jury.

Affirmed.

TAYLOR and MAY, JJ., concur.